UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAYETTE L. NALE,

                    Plaintiff,         No. 09-cv-13401
                                    Hon. Gerald E. Rosen
v.                                          Mag. R. Steven Whalen

FORD MOTOR COMPANY UAW
RETIREMENT PLAN,

                    Defendant.
_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING
CROSS-MOTIONS FOR DECISION ON THE ADMINISTRATIVE RECORD**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on       March 31, 2010      

PRESENT: Honorable Gerald E. Rosen
                    Chief Judge, United States District Court

## I. INTRODUCTION

In the present suit, Plaintiff Fayette L. Nale challenges the denial of her claim for benefits by the Defendant Ford Motor Company - UAW Retirement Plan. The central question is whether Plaintiff's voluntary manslaughter conviction in the death of her husband disqualifies her from collecting survivorship benefits under his pension. The Court's subject matter jurisdiction over this case rests upon the fact that the Defendant Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"),

29 U.S.C. § 1001 *et seq.*

Both parties have now moved for a decision on the administrative record.[1] Each of these motions has been briefed by the parties. Upon reviewing the parties' cross-motions and accompanying briefs, the pleadings, and the administrative record, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these materials, and that oral argument would not significantly aid the decisional process. Accordingly, the Court will decide the parties' cross-motions "on the briefs." See Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.

As discussed below, the Court will decide the parties' motions under the guidelines set forth by the Sixth Circuit in Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 619 (6th Cir. 1998).[2] This opinion and order sets forth the Court's findings of fact and conclusions of law. To the extent that any findings of fact constitute conclusions of law, they are adopted as such. To the extent that any conclusions of law constitute findings of fact, they are so adopted.

---

[1] Defendant timely filed a Motion for Judgment Affirming the Administrative Record on January 13, 2010. Plaintiff failed to file a Cross-Motion by this deadline, clearly outlined in the Court's Scheduling Order. After consultation with the Court and by stipulation of the parties, Plaintiff filed a combined Response to Defendant's Motion and Cross-Motion for Judgment Reversing the Administrative Record, twenty-two days after Defendant filed its motion. Defendant timely filed a response to Plaintiff's motion. Plaintiff did not file a reply.

[2] Specifically, the Sixth Circuit has held that district courts generally should review challenged benefit denials "based solely upon the administrative record, and [should] render findings of fact and conclusions of law accordingly." Wilkins, 150 F.3d at 619.

## II. FINDINGS OF FACT

### A. The Parties

Plaintiff Fayette Lynn Nale and her husband, Michael, were married for over thirty years. Both had careers with Ford Motor Company, before retiring.[3] During his marriage to Plaintiff, Michael Nale enrolled in the Defendant Fort Motor Company - UAW Retirement Plan and designated Plaintiff as the beneficiary under the automatic surviving spouse method of payment option. On September 13, 2007, Michael Nale died when he was stabbed by Plaintiff in the course of a domestic dispute. Plaintiff was subsequently prosecuted on second degree murder and manslaughter charges.[4] She pled not guilty, denying intentionally or negligently causing his death. On February 19, 2009, she was acquitted of the second degree murder charges, but convicted of voluntary manslaughter under Mich. Comp. Laws § 750.321. A little over a month later, she was sentenced to a minimum of 34 months and a maximum of 15 years in prison. She is currently incarcerated at a women's correctional facility in Ypsilanti, Michigan, and has not pursued an appeal of her conviction.

The Defendant Retirement Plan is a pension plan governed by ERISA, which

---

[3] Plaintiff took a disability retirement and her husband took an early retirement in November 2005. Plaintiff continues to receive a monthly disability pension.

[4] Plaintiff was charged under Michigan's general "manslaughter" statute, Mich. Comp. Laws § 750.321, which states: "Any person who shall commit the crime of manslaughter shall be guilty of a felony punishable by imprisonment in the state prison, not more than 15 years or by fine of not more than 7,500 dollars, or both, at the discretion of the court." The jury was given *voluntary* manslaughter instructions.

provides retirement benefits to eligible hourly UAW-represented employees of Ford Motor Company and its affiliates, pursuant to a collective bargaining agreement. Individual benefit determinations are made by a Board of Administration that consists of six members, three representing the company and three representing the union. The Board's duties and powers are set forth in the Retirement Plan document (the "Plan"). (See Admin. Record at 302-55.) Apart from the Plan, the administrative record also includes the Summary Plan Description (the "SDP") (see Admin. Record at 356-412). Both the Plan and the SDP describe participation requirements as well as circumstances that may affect retirement benefits.

B.     **The Pertinent Plan Provisions**

Under the Plan, an eligible employee is entitled to retirement benefits upon or after reaching "his/her normal retirement age." (Plan at 76; Admin. Record at 330.) The amount of benefits is determined by reference to an employee's "Benefit Class," which in turn is determined by the date of retirement. (Plan at 76-77; Admin. Record at 330.) The plan further provides survivor's benefits for an employee's spouse if the employee dies on or after reaching retirement age. (Plan at 65; Admin. Record at 324.) The monthly survivor's benefit generally becomes automatically payable to the spouse on the first of the month following the date of the employee's death. (Plan at 89; Admin. Record at 336.) Finally, these provisions are all covered by Article IX, which provides: "Where federal law does not control, the Plan, and all rights thereunder, shall be governed, construed, and administered in accordance with the laws of the State of Michigan." (Plan

4

at 162; Admin. Record at 353.)

The Plan is administered by a Board of Administration. Article VII provides in relevant part:

> It shall be the function of the Board to administer the Plan . . . . The Board shall have jurisdiction to pass upon all questions concerning the application or interpretation of the provisions of the Plan which it is empowered to administer. After review of an appeal, the disputed benefits under this Plan will be paid only if the Board decides in its discretion that the employee or claimant is entitled to them under the terms of the Plan. The Board shall decide all such questions in accordance with the terms of the Plan, and all such decisions of the Board shall be final and binding upon the Company, the Union, the employees, and the beneficiaries or claimants under the Plan, subject only to the arbitrary and capricious standard of judicial review . . .

(Plan at 148; Admin. Record at 346.)[5]

## C. Plaintiff's Claim for Benefits

Plaintiff was not paid survivorship benefits from her husband's retirement plan following his death in September 2007. The benefits administration office's case file indicates that Ford stopped payment pending investigation of Plaintiff's eligibility in light of the then on-going homicide investigation and prosecution. There is no record of a formal application for benefits from Plaintiff and no formal denial letter.[6] Following her conviction of manslaughter, Plaintiff, by and through counsel, filed a claim for benefits

---

[5] Defendant's brief quotes slightly different language but cites the same range of pages in the Plan. The error does not affect the Court's decision in this case.

[6] On October 15, 2007, Charlotte B. Nale, Michael Nale's mother and the special representative of his estate, made a claim to all pension and other benefits. There is no evidence in the record as to whether this request was granted or denied.

on March 27, 2009. The request stated:

> Mrs. Nale was acquitted of the charge of Second Degree Murder, and found Guilty of the Lesser Charge of Manslaughter by a Jury in the death of her husband. Manslaughter is a non-intent crime which indicates that the jury at least understood that she did not want her husband dead. Therefore, under state law and, I trust, the regulations for surviving spouse pension benefits, Mrs. Nale is eligible to receive those benefits, retroactive to the date of his death—September 13, 2007.

(Admin. Record at 29.) In the months that followed, Ford treated Plaintiff's request as an appeal from denial of benefits and requested additional information from Plaintiff in an attempt to clarify the eligibility issue.

The Board finally reviewed Plaintiff's request at a meeting held on July 2, 2009. They were unable to make a determination and put the case on hold pending more research on the legal questions underpinning Plaintiff's claim. A Board of Administration employee contacted Plaintiff to inform her of the delay and to invite her to submit any additional information that may inform the Board's decision before its next planned meeting at the end of July.[7] The Board met again on July 29, 2009, where it decided to deny Plaintiff's claim.

On August 10, 2009, Ford Motor Company issued a letter denying the claim, citing Article IX of the Plan and Plaintiff's manslaughter conviction. The letter also informed

---

[7] Plaintiff's counsel communicated with the Ford benefits administration office throughout July 2009, submitting legal memoranda, court records and police reports, as well as jury instructions from Plaintiff's manslaughter trial. The Board was also provided a transcript of the felony preliminary examination in Plaintiff's criminal prosecution, which included testimony from the officers who responded to Plaintiff's 911 call after the stabbing and the medical examiner who performed the autopsy on Michael Nale's body.

Plaintiff of her rights to bring suit under ERISA. In the week that followed, Plaintiff corresponded with the Ford benefit claims administration office to obtain complete copies of the Plan and the SDP. Plaintiff's counsel wrote to say that, although she had received a copy of the plan documents prior to the Board's July 29 meeting, such copy included all portions that govern claim procedures but lacked Article IX. (Admin. Record at 6.)

Plaintiff filed this case on August 27, 2009, claiming wrongful denial of benefits because, she argues, under Michigan law the manslaughter conviction "is not considered an intentional causing of death such that [Plaintiff] should be denied survivor benefits." (Compl. ¶ 11.) On or around the same date, Plaintiff filed an appeal in a related probate proceeding in Macomb County Probate Court, challenging that court's order forfeiting and revoking Plaintiff's rights to her husband's estate and denying Plaintiff's request to remove her husband's mother as personal representative of the estate. The appeal is still pending. Defendant argues that Plaintiff was properly denied the benefits on the basis of Michigan's "slayer statute" and analogous federal common law, which are made applicable to the Plan through Article IX.

### III. CONCLUSIONS OF LAW

**A.  Applicable Standard of Review**

The Supreme Court has ruled that the standard of review in ERISA cases is *de novo* unless the benefit plan gives the plan administrator discretion to determine eligibility for benefits or construe plan terms:

> Consistent with established principles of trust law, we hold that a denial of

> benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). See also Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 616 (6th Cir. 1998). However, "where an ERISA plan expressly affords discretion to trustees to make benefit determinations, a court reviewing the plan administrator's actions should apply the arbitrary and capricious standard of review." Williams v. International Paper Co., 227 F.3d 706, 711 (6th Cir. 2000).

The arbitrary and capricious standard is a highly deferential one. See Killian v. Healthsource Provident Adm'rs, Inc., 152 F.3d 514, 520 (6th Cir. 1998) (quoting Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 380 (6th Cir. 1996)). Under the arbitrary and capricious standard, a court will uphold a plan administrator's benefit determination if that determination was rational in light of the plan's provisions. Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir. 1988), *cert. denied*, 488 U.S. 826, 109 S. Ct. 76 (1988). See also Davis v. Kentucky Finance Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989), *cert. denied*, 495 U.S. 905, 110 S.Ct. 1924 (1990) ("[W]hen it is possible to offer a reasoned explanation, based on evidence for a particular outcome, the outcome is not arbitrary and capricious.") Although review pursuant to the arbitrary and capricious standard is thus extremely deferential, it "is not no review, and deference need not be abject." McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 172 (6th Cir. 2003)

8

(citations and internal quotation marks omitted).

In this case, the parties concede that the arbitrary and capricious standard applies. The Plan unambiguously vests complete discretion for benefit determination in the Board of Administration. Accordingly, the Court looks only to whether "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." Shields v. Reader's Digest Ass'n, Inc., 331 F.3d 536, 541 (6th Cir. 2003).

**B.      Defendant's Failure to Follow Claim Procedures**

First, Plaintiff argues that Defendant failed to follow its own claim procedures as required by applicable Plan language. Specifically, Plaintiff argues that because there is no record of an initial denial of benefits, Defendant's treatment of Plaintiff's claim for benefits in March 2009 as a request for a *review upon appeal* was not proper. Plaintiff also argues that because she was notified eleven days after the Board's decision, rather than the requisite five, the notification of denial violated claim procedures.

Under the Code of Federal Regulations, employers subject to ERISA must establish certain procedures for review of adverse benefit determinations. See, e.g., 29 C.F.R. § 2560.503-1(b). This procedure must provide a "full and fair review" of adverse claim determinations. 29 C.F.R. § 2560.503-1(h)(1). However, the lack of an ERISA-compliant procedure or the failure to follow a plan procedure does not give rise to its own cause of action. Rather, the remedy is to treat a claimant as having exhausted the administrative remedies available under the plan. 29 C.F.R. § 2560.503-1(l). Under these circumstances, the claimant "shall be entitled to pursue any available remedies

under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." Id. See also Dotson v. Arkema, Inc., No. 08-CV-13118, 2009 WL 152144, *4 (E.D. Mich. Jan. 21, 2009). Section 502(a) of ERISA, 29 U.S.C. § 1132(a), in turn permits a plan participant or beneficiary to bring a civil action to recover benefits due him under the terms of the plan, as Plaintiff has done in this case. See 29 U.S.C. § 1132(a)(1)(B).

The Defendant Plan sets out a clear procedure for benefit determinations. In the event of a denial of benefits, the Plan provides for the claimant to receive a written notification within 90 days explaining:

> (i) the specific reason or reasons for the denial; (ii) specific reference to the pertinent Plan provisions on which the denial is based along with a copy of such Plan provisions or a statement that one will be furnished at no charge upon the claimant's request; (iii) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (iv) appropriate information as to the steps to be taken if the claimant wishes to submit his or her claim for review, along with the claimant's right to bring a civil action under Section 502(a) of ERISA following an adverse benefit determination on review.

(Plan Art. at 150-51, Admin. Record at 347.) The Plan further provides: "In the event that the Plan Administrator or an employee of the Board of Administration denies a claim . . ., a claimant may (i) request a review upon appeal by written application to the full Board of Administration; (ii) review pertinent documents; and (iii) submit issues and comments in writing." (Plan Art. at 155, Admin. Record at 349.) This written notice "will be made not later than five (5) days after the decision has been made by the Board.

10

(Id.)

Here, there is no evidence that Defendant made a formal, initial determination of denial of benefits or provided Plaintiff with a written notification explaining the denial in the two years that followed Michael Nale's death. Defendant stopped payment on the survivorship benefits immediately upon learning of Plaintiff's prosecution, pending an outcome in the homicide investigation and resolution of eligibility issues. However, the only letter in the administrative record communicating the formal denial of benefits is the letter dated August 10, 2009, which states:

> This letter is to inform you that *the appeal* you submitted on behalf of Fayette Nale for survivor benefits was denied by the Ford Motor Company-UAW Retirement Board Committee in accordance with Article IX of the Ford-UAW Retirement Plan (Plan) as a result of Ms. Nale's Manslaughter conviction. A copy of Article IX of the Plan will be provided at no charge upon request.
>
> Decisions of the Committee are final and conclusive, and are only subject to the arbitrary and capricious standard of judicial review.
>
> You have the right to bring a civil action under Section 502(a) of the Employment Retirement Income Security Act (ERISA) of 1974, as amended following the denial of *your appeal*.

(Admin. Record at 008) (emphasis added). While it is possible that Defendant considered the two years of stopped payments as the initial denial, the fact remains that there is no evidence of a written notification given prior to August 2009 as required by the plan documents. Defendant thus failed to follow its own claim procedures. Pursuant to federal regulations, Plaintiff is "deemed to have exhausted the administrative remedies available under the plan." 29 C.F.R. § 2560.503-1(l).

Nevertheless, to the extent that Plaintiff argues that Defendant failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim, the Court finds such arguments unavailing. The Board of Administration clearly worked over the course of several months following Plaintiff's March 2009 claim for benefits to fully inform itself of the underpinnings of Plaintiff's claim. Specifically, the Board sought extra time to investigate Plaintiff's eligibility to receive survivor's benefits in light of her role in her husband's death. The Board provided Plaintiff ample opportunity to present her claim and even directed Plaintiff's counsel to brief the specific issue of "intent." Based on the foregoing, the Court holds that Defendant's procedural failings did not deprive Plaintiff of a reasonable claims procedure. Rather, the record shows that the Board and its employees diligently collected information and reviewed Plaintiff's claim before reaching its final decision.[8] The Court thus turns to whether that determination

---

[8] Plaintiff also makes general allegations that she was misled about the review process in the months that preceded the Board's final determination. While there is some evidence to indicate that Defendant was sloppy in executing its claim procedures—for example, providing Plaintiff with only a partial copy of plan documents, notably omitting Article IX, during the review process—there is no evidence in the administrative record to support the allegations that Plaintiff was misled. Plaintiff's brief oddly focuses on Plaintiff's *counsel's* personal confusion about the review process. This, however, cannot be equated with Defendant's failure to follow its claim procedures. Rather, there is ample evidence to indicate that the Board and its employees attempted to keep Plaintiff apprised of its progress and concerns.

Moreover, the Court notes that Plaintiff is not suing for denial of her informational rights under ERISA, 29 U.S.C. § 1132(c). Plan administrators under ERISA have an obligation to give notice to an insured of his or her rights under a policy and to provide participants with copies of the plan's annual report, a statement of rights under the plan, and a statement of benefits. See 29 U.S.C. §§ 1022, 1024, 1025. Here, Plaintiff has not alleged that, as a general matter, Defendant violated these duties. Had she done so, she

was rational in light of the plan's provisions.

**C.     Denial of Survivor's Pension Benefits**

Defendant argues that it has provided a reasoned and rational explanation for the denial of Plaintiff's claim.  Specifically, under the Plan, rights and eligibility must be administered in accordance with federal law, and where federal law does not control, with Michigan law.  Since both state and federal law prohibit an individual from profiting from the killing of another individual and Plaintiff was convicted of voluntary manslaughter in the death of her husband, Defendant argues that she is barred from receiving the proceeds of his retirement plan.  Plaintiff counters that because the killing was not intentional, in the sense that she did not *want* to kill her husband, the application of Michigan's "slayer statute" and analogous federal common law is not appropriate.

Michigan, like most other states, has adopted a "slayer statute" which provides: "The felonious and intentional killing of the decedent [revokes] [d]isposition or appointment of property made by the decedent to the killer in a governing instrument."

---

might be entitled to the statutory penalty for failure to provide plan documents, available under 29 U.S.C. § 1132(c).  Yet the record only indicates that the documents initially provided to Plaintiff's counsel, who was acting under a power of attorney, were incomplete.  A copy of the Plan, including Article IX, was delivered to Plaintiff after the Board's decision, only upon receiving a written request from Plaintiff's counsel.  Ultimately, even if this conduct amounted to a breach of Defendant's obligations under ERISA, the Sixth Circuit has held "that 'nothing in [ERISA's civil enforcement provision] suggests that a plan beneficiary should receive a benefit award based on a plan administrator's failure to disclose required information.'" Del Rio v. Toledo Edison Co., 130 Fed. Appx. 746, 751 (6th Cir. 2005) (unpublished) (citing Lewandowski v. Occidental Chem. Corp., 986 F.2d 1006, 1009 (6th Cir. 1993).  The remedy is not an award of benefits.

13

Mich. Comp. Laws § 700.2803(2). The Court first considers whether ERISA preempts this statute. Generally, ERISA preempts a state law that relates to—that is, that "has a connection with or reference to"—employee benefit plans. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97, 103 S.Ct. 2890 (1983); see 29 U.S.C. § 1144(a). Where ERISA preempts state law, but is silent or ambiguous on a particular question, the Court turns to federal common law. Muse v. International Business Machines Corp., 103 F.3d 490, 495 (6th Cir. 1996). Although it seems reasonably clear that the application of a state slayer statute may alter the distribution of benefits under an employee benefits plan, there is some debate among federal courts as to whether ERISA preempts state slayer statutes. Compare Addison v. Metropolitan Life Ins. Co., 5 F. Supp.2d 392 (W.D. Va. 1998) (recognizing that federal common law preempts), with Administrative Committee for the H.E.B. Inv. and Retirement Plan v. Harris, 217 F. Supp.2d 759 (E.D. Tex. 2002) (holding that state law "slayer's rule" persists un-preempted). Many courts have simply declined to resolve the issue because federal common law, which encompasses the equitable principle that a person should not benefit from his wrongs, see Mutual Life Ins. Co. v. Armstrong, 117 U.S. 591, 600, 6 S. Ct. 877 (1886), almost universally produces the same result as state law. See, e.g., First Nat'l Bank & Trust Co. of Mountain Home v. Stonebridge, 502 F. Supp. 2d 811, 814 (E.D. Ark. 2007); Atwater v. Nortel Networks, Inc., 388 F. Supp. 2d 610, 614-15 (M.D.N.C. 2005); Connecticut Gen. Life Ins. Co. v. Riner, 351 F. Supp. 2d 492, 497 (W.D. Va. 2005). Neither the Sixth Circuit, nor the Supreme Court has yet ruled on whether state slayer statutes are preempted. In dicta, however, the Supreme Court

stated:

> In the ERISA context, these "slayer" statutes could revoke the beneficiary status of someone who murdered a plan participant. Those statutes are not before us, so we do not decide the issue. We note, however, that the principle underlying the statutes—which have been adopted by nearly every State—is well established in the law and has a long historical pedigree predating ERISA. See, e.g., Riggs v. Palmer, 115 N.Y. 506, 22 N.E. 188 (1889). And because the statutes are more or less uniform nationwide, their interference with the aims of ERISA is at least debatable.

Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 152, 121 S. Ct. 1322 (2001). This tends to suggest that ERISA would not preempt state slayer statutes. In any event, the Court finds, as numerous other federal courts have, that it need not resolve this issue because it is not determinative of the outcome in this case. Moreover, the parties agree that whether state law or federal law applies, the dispute is limited to whether voluntary manslaughter is an intent crime.

Mich. Comp. Laws § 750.321 specifies the punishment for the crime of manslaughter. However, it is the common law that defines the crime. People v. Pouncey, 437 Mich. 382, 388, 471 N.W.2d 346 (1991). In Michigan courts, manslaughter requires a showing of the following elements: "First, the defendant must kill in the heat of passion. Second, the passion must be caused by an adequate provocation. Finally, there cannot be a lapse of time during which a reasonable person could control his passions." Id. Provocation is not an element of the offense; rather provocation mitigates a homicide from murder to manslaughter by causing the defendant to act out of *passion* rather than *reason*. People v. Townes, 391 Mich. 578, 590, 218 N.W.2d 136 (1974).

Manslaughter has alternatively been defined as "murder without malice." People v. Mendoza, 468 Mich. 527, 534, 664 N.W.2d 685 (2003). Plaintiff argues that the absence of malice is tantamount to the absence of intent, and thus that, in her criminal trial, the jury's finding that Plaintiff was only guilty of the lesser crime of manslaughter was tantamount to a finding that she killed her husband without intent—such that she is not a "slayer" under the state rule.

This is logically incorrect. As Plaintiff argued to the Board, malice is the "intentional doing of a wrongful act *without just cause or excuse*." (Admin. Record. at 0011) (emphasis added). Under this definition, killing *without* malice includes intentional killing with just cause or excuse. As discussed above, the crime of voluntary manslaughter inherently encompasses a cause or excuse—acting out of passion without time to cool off. It is this element, and not the absence of intent, that reduces a wrongful killing from murder to manslaughter. The Michigan Supreme Court has confirmed this principle, explaining that "both murder and voluntary manslaughter require a death, caused by defendant, with either an *intent* to kill, an *intent* to commit great bodily harm, or an *intent* to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." Id. at 540, 664 N.W.2d 685 (emphasis added). The Michigan Court of Appeals has stated more explicitly:

> *Voluntary manslaughter is an intentional killing* committed under the influence of passion or hot blood produced by adequate provocation and before a reasonable time has passed for the blood to cool. People v. Fortson, 202 Mich. App. 13, 19, 507 N.W.2d 763 (1993). An essential element of the crime of voluntary manslaughter is the intent to kill or commit serious

16

> bodily harm. People v. Delaughter, 124 Mich. App. 356, 360, 335 N.W.2d 37 (1983).

People v. Hess, 214 Mich. App. 33, 38, 543 N.W.2d 332 (1995) (emphasis added). By contrast, involuntary manslaughter is the "catch-all" homicide crime: it is defined as "the *unintentional* killing of another, without malice, during the commission of an unlawful act not amounting to a felony and not naturally tending to cause great bodily harm; or during the commission of some lawful act, negligently performed; or in the negligent omission to perform a legal duty." Mendoza, 468 Mich. at 536, 664 N.W.2d 685 (emphasis added).

Because voluntary manslaughter is an intentional killing under Michigan law and because Plaintiff was convicted of voluntary manslaughter, Plaintiff is subject to both Michigan's slayer statute and the federal common law "slayer's rule." Neither state nor federal law, which are made applicable to the Plan through Article IX, allow Plaintiff to recover her husband's benefits. In light of the foregoing, the Court upholds Defendant's denial of benefits as it was clearly rational in light of the plan's provisions. That is, under the terms of the Plan, the Board of Administration was constrained to apply federal common law or Michigan law. Treating Plaintiff's manslaughter conviction as *prima facie* evidence of an intentional killing, the Board could reasonably conclude that Plaintiff was disqualified from collecting her husband's benefits. The decision was thus not arbitrary and capricious, nor, perhaps more importantly, was it erroneous as a matter of law.

17

Finally, Plaintiff has provided no cognizable legal argument to refute this finding. Instead, the remainder of her brief restates the circumstances surrounding her husband's death, namely the allegedly accidental nature of the stabbing and the possible grounds for provocation, i.e., the argument that precipitated the struggle over a knife and Michael Nale's history of verbal and physical abuse. The jury in the criminal trial was presented with these facts and instructed on both of Plaintiff's defenses—self-defense and accident—before ultimately handing down a verdict of guilty on the charge of voluntary manslaughter, an intent crime. It was not incumbent on the Board of Administration to reevaluate the trial record and sit in judgment a second time when assessing Plaintiff's claim for benefits. Nor is Plaintiff entitled to an independent determination in this Court that Plaintiff did not, in fact, intentionally kill her husband.

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion for Judgment Affirming the Administrative Record (Dkt. # 18) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Judgment Reversing the Administrative Record (Dkt. # 19) is DENIED.

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated: March 31, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2010, by electronic and/or ordinary mail.

s/Ruth A.Gunther
Case Manager
(313) 234-5137